JOAQUINA COUVERTHIE DE SANTIAGO, Plaintiff and Appellee, *v.* JAVIER SANTIAGO, Defendant and Appellant.

No. 8813. Argued December 22, 1943.—Decided January 13, 1944.

*F. R. Aponte* for appellant. *Alvaro Ortiz* for appellee.

MR. ACTING CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The plaintiff herein alleges that she is the owner of a lot measuring 150 square meters, which forms part of a one-acre (*cuerda*) tract; that the defendant occupies said lot without paying any rent or charge to the plaintiff owner; that on said lot there is a frame house which belongs to the defendant and has a value not exceeding $100; that the defendant has refused to vacate the lot and to remove the house therefrom which he can do without injury to the lot; that the plaintiff is willing to deposit the sum of $100 or the amount of any appraisal which the court may make; and that the lot has a value of $450 which the defendant has refused to pay to her.

The defendant in his answer admits that he occupies the lot without paying any rent or charge, and as a defense he alleges that he holds and is in possession as owner of

a lot measuring 600 meters with a frame house thereon; that he has been in possession of the house and lot, publicly, peacefully, and uninterruptedly for thirty years; that the immovables are worth $1,000; that the action brought is barred; and that the municipal court lacks jurisdiction by reason of the amount in controversy.

At the trial before the District Court of Humacao, the parties submitted the case upon a stipulation of facts. According to said stipulation, the evidence for the plaintiff establishes in substance the following facts:

In December 1910, Genaro Martínez purchased the property "Villa del Recreo" and granted the defendant Javier Santiago a permit to build a kiosco on the same lot which he now occupies in a corner of said property. Martínez made a gift of the parcel to Santiago in order that the latter should watch over the property and prevent the entrance of animals therein, but he never executed any deed in his favor. In 1915 Martínez sold the property to Doña Francisca Iraris, widow of Ortiz. The lot occupied by the defendant has an area of 225 square meters and is worth $450, and on it there is a frame house with some annexes built by the defendant. The house has an approximate value of $225.

On July 2, 1929, the defendant stated to the appraiser of property of Humacao, that he was the owner of a house standing on a lot of Central Pasto Viejo, one of the predecessors in interest of the plaintiff. The defendant never paid any taxes on the lot, but he did on the house. On a certain occasion the defendant asked the general manager of the plaintiff whether the latter would be willing to sell to him the lot on the instalment plan. When the plaintiff acquired the property "Villa del Recreo" she had no knowledge of the alleged donation of the lot to the defendant.

The evidence for the defendant tended to prove the following facts:

That in 1915 José M. Díaz and his brothers were owners of the property; that the defendant Santiago was in possession of the lot in controversy, which was fenced with wire; and that Díaz and his brothers never interfered with the defendant as they thought that the lot belonged to him.

The documentary evidence introduced by the plaintiff without any objection on the part of the defendant, was as follows: (a) a deed whereby Eastern Sugar Associates (a Trust) sold the property "Villa del Recreo" to the plaintiff; (b) a deed whereby the plaintiff segregated a one-acre parcel which included the lot in question, and (c) a certificate from the registry of property showing that no segregation whatsoever has been made from the property "Villa del Recreo" in favor of the defendant Santiago and that said property is recorded in the name of the plaintiff.

The lower court admitted, over the objection of the defendant, a certified copy of the return for the tax year of 1929–30 in which the defendant admitted under oath that Central Pasto Viejo was the owner of the lot. The explanation given by the defendant, to the effect that the appraiser had only asked him whether he had recorded the lot and whether he had a deed to the house or to the lot, to which he answered in the negative, was not believed by the trial court.

The defendant has taken the present appeal from a judgment whereby the complaint was sustained and it was decreed that the plaintiff was entitled to the ownership of the house of the defendant upon the payment of its value amounting to $300; and that in case the defendant elected to retain the lot he should pay to the plaintiff the sum of $450. The defendant was adjudged to pay the costs and $50 as attorney's fees.

The case has been submitted to us upon briefs. The appellant urges that the trial court erred in weighing the stipulation of facts; in sustaining the complaint despite the exist-

ence of a conflict of titles; and in adjuging the defendant to pay attorney's fees.

■ 1. In his argument under the first assignment of error the appellant maintains that, although it is true that in accordance with §575 of the Civil Code a gift of real property must be embodied in a public instrument and accepted, nevertheless, as the gift in the case at bar was made in December 1910, and as the defendant took possession of the premises, after holding such possession for ten years, the defect was cured by prescription; and, further, that even though defendant's title were considered as defective, such defect was cured by the extraordinary prescription of 30 years. In support of his contention, he cites the case of *Arroyo et al.* v. *Bruno et al.*, 23 P.R.R. 757, in which, to quote from the syllabus, it was held:

"Although a gift of real property may not be evidenced by a public instrument, as required by section 641 of the Civil Code (Section 575, 1930 ed.), if the donee accepts it, enters into possession of the property donated *as owner and continues in the* public, peaceful and uninterrupted *possession for a period of ten years,* the failure to make the gift by public instrument is cured by prescription." (Italics ours.) *Arroyo et al.* v. *Bruno et al., supra.*

Ownership and other real rights in real property shall prescribe by possession in good faith and under a just title for ten years as between persons present, and for twenty years as between absentees, or by the uninterrupted possession of the same for thirty years without the necessity of title or good faith and without distinction between present and absent persons, §§1857 and 1859 of the Civil Code, 1930 ed. However, the possession on which the acquisition of ownership by prescription may be based "must be in the capacity of an owner, public, peaceful and uninterrupted," it being so expressly required by §1841 of said code and by the decisions cited by the appellant himself. *Arroyo et al*

v. *Bruno et al., supra; García et al.* v. *Altuna et al.,* 17 P.R.R. 435; *González* v. *Heirs of Roqué,* 47 P.R.R. 492.

According to §575 of the Civil Code, in order that a gift of real property may be valid it must be made by public instrument, and in order that it may be effective, it must be accepted, also in a public instrument, during the life of the donor. Consequently, such a gift when made verbally is nonexistent and can not constitute the just title required for the ordinary prescription of ten years.

The decision in *Arroyo et al.* v. *Bruno et al., supra,* in so far as it attributes to a verbal gift, followed by the taking of possession of the donated real property, the same value as a just title, for the purpose of the acquisition of ownership by the lapse of the ten-year period of prescription as between persons present and with good faith, is erroneous and must be considered as overruled.

■ As regards the extraordinary prescription relied on by the appellant, the evidence of the plaintiff, which was accorded credit by the trial court, is sufficient to establish the non-existence of the *animus domini* required by law in order that the possession may ripen into the acquisition of ownership by prescription. The entry of the defendant upon the lot, in December 1910, took place under a permit granted to him by the then owner of the property, for building a kiosk. And even though Martínez testified that he had subsequently donated the lot to him, no date whatsoever is fixed from which the prescriptive period might be computed. On July 2, 1929, the defendant stated under oath that the lot which he then ocupied and now claims belonged to Central Pasto Viejo. And subsequent to December 2, 1940, the date on which the plaintiff purchased the property, the defendant acknowledged plaintiff's title and admitted that he did not occupy the lot under claim of ownership when he sought to purchase the lot on the instalment plan. To controvert this evidence which precluded prescription from running in his

favor, and which tended to prove that his possession had as a basis a mere license or tolerance from the owner, the defendant failed to introduce any evidence tending to prove that he had held possession as owner. There was no error in the weighing of the evidence.

■ 2. The plaintiff having admitted that the defendant is the owner of the house and that he built it in good faith, with the consent of the former owner of the lot, and the defendant having failed to establish any title to the land on which said house stands, the lower court did not err in holding that the plaintiff, as owner of the lot, in accordance with §§292, 382, and 383 of the Civil Code (1930 ed.) is entitled to appropriate the house upon the payment of the corresponding compensation, or to compel the defendant to pay the value of the land. The decisions cited by the appellant, in which it is held that any conflict of titles existing between the two litigants should be settled in a proper declaratory action, and not within the special and summary proceeding of unlawful detainer, are inapplicable to the present case.

■ 3. This Supreme Court, in *Amy* v. *Aponte,* 31 P.R.R. 60, and *González et al.* v. *Fernández,* 31 P.R.R. 525, held that in appeals from municipal courts, the district courts have no power to allow attorney's fees for services rendered in the municipal court nor for those rendered in the district court on appeal. The ground for those decisions was that, under the law in force in 1922 when they were rendered, (§327 of the Code of Civil Procedure, as amended by the Act of April 12, 1917), the right to recover attorney's fees from the defeated party was confined to actions or proceedings originally brought in the district courts.

The plaintiff-appellee maintains that §327 of the Code of Civil Procedure, as amended by Act No. 94 of May 11, 1937 (Laws of 1936–37, p. 229), authorizes both the municipal courts and the district courts to allow attorney's fees in cases originating in the municipal courts. Said Section provides:

"The party in whose favor any final judgment or resolution is rendered shall be allowed costs, which shall comprise the following disbursements:

"  *           *           *           *           *           *           *

"In case any party shall have acted rashly, the court shall include in its judgment the payment of the fees of the attorney for the other party, stating in its judgment the amount of said fees, taking into account the degree of guilt in the litigation and the work necessarily done by the attorney of the other party; . . ."

We agree with the appellee that §327 in its amended form grants to the municipal courts as well as to the district courts the power to allow attorney's fees. Where there are facts or reasons showing that the defeated party has acted rashly in bringing suit or in setting up a defense, it is the duty of the trial court to impose upon him the payment of the attorney's fees incurred by the other party. In the absence of such facts or reasons, the court has no authority to impose the payment of attorney's fees.

From the record before us no fact or reason appears which would justify the imposition of attorney's fees on the defendant. Neither in the statement of the case and opinion, nor in the judgment of the lower court, do we find any pronouncement as to the existence of obstinacy on the part of the defendant-appellant. Therefore, as we are not in a position to weigh the reasons which the lower court may have had for allowing attorney's fees, and as we are of the opinion that the defendant did not act rashly, we think that the judgment appealed from should be modified by eliminating therefrom the item of attorney's fees.

And as thus modified, the judgment will be affirmed.

Mr. Justice Snyder did not participate herein.